Irene SCHUCHARD, Plaintiff and Appellee,

v.

John Leo SCHUCHARD, Defendant and Appellant.

Civ. No. 9734.

Supreme Court of North Dakota.

May 15, 1980.

---

Scott R. Thompson, of Foughty, Christianson & Thompson, Devils Lake, for plaintiff and appellee.

Arne F. Boyum, Jr., Rolla, for defendant and appellant.

VANDE WALLE, Justice.

John Leo Schuchard appeals from a judgment and decree of divorce entered by the Rolette County district court on September 17, 1979. We affirm.

John Leo Schuchard and Irene Schuchard were married in Canada on May 30, 1959. Mrs. Schuchard was a widow at the time and had children by a previous marriage. The parties, along with two of Mrs. Schuchard's sons, moved to North Dakota where they lived with Mr. Schuchard's mother on a farm owned by her. Soon after the marriage the two boys were adopted by Mr. Schuchard.

In 1963, a parcel of land consisting of 160 acres ("Parcel A") was transferred from Mr. Schuchard's mother to the parties in joint tenancy in order that Farmers Home Administration financing could be obtained for a new house. Upon the mother's death in 1969, Mr. Schuchard alone received title to the remaining 160 acres of the farm ("Parcel B"). No consideration was paid Mr. Schuchard's mother for either transfer other than allowing her to reside in the house with the parties.

In 1978, Mrs. Schuchard commenced an action for divorce, which was granted by the district court. The court awarded Mr. Schuchard Parcel A along with certain personal property. Mrs. Schuchard was awarded Parcel B and certain personal property. Mr. Schuchard now appeals from the judgment.

Our only issue for consideration is whether or not the district court's failure to award Mr. Schuchard all of the real estate was clearly erroneous and inequitable. A trial court's determinations on matters of property division are treated as findings of fact. *Bosma v. Bosma*, 287 N.W.2d 447 (N.D.1980); *Haugeberg v. Haugeberg*, 258 N.W.2d 657 (N.D.1977). Thus our scope of review of these findings on appeal is limited by Rule 52(a), North Dakota Rules of Civil Procedure, and we will not set aside those findings unless they are shown to be clearly erroneous. A finding of fact is deemed "clearly erroneous" when, although there is

some evidence to support it, the reviewing court, on the entire evidence, is left with a firm and definite conviction that a mistake has been made. *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D.1979); *Haberstroh v. Haberstroh*, 258 N.W.2d 669 (N.D.1977).

■ In dividing the marital estate, the trial court is governed by Section 14–05–24, N.D.C.C., which provides:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

This court has also provided the district courts with some guidelines to be used in dividing the marital property, although we have not specifically said that the trial court must make an express finding as to each of these factors. *Nastrom v. Nastrom, supra.* These guidelines, known as the *Ruff-Fischer* guidelines, were first enumerated in *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). See *Fries v. Fries*, 288 N.W.2d 77 (N.D.1980).

As is stated in *Nastrom v. Nastrom, supra* :

"These guidelines provide that in determining the division of property under Section 14–05–24, N.D.C.C., the trial court may consider the respective ages of the parties to the marriage; their earning abilities; the duration of [the marriage] and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time; its value and its income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material." 284 N.W.2d at 581.

■ In light of the evidence adduced at trial, the district court concluded, in part, in its findings of fact:

"II

"Plaintiff, age 64, and Defendant, age 66, were married at Fort Francis, Ontario, Canada, on May 30, 1959.

"III

"No children have been born of this marriage although Defendant did adopt two of her children by a prior marriage, both of them being of age.

"She had been previously married in Canada, was a Canadian citizen, and moved to the United States upon her marriage to Defendant. She sold a home in Canada for $6500.00 and received $1500.00 in life insurance on her deceased husband, all of which she brought to the marriage, along with numerous items of furniture.

"IV

"They lived continuously on a farm previously owned by Defendant and built a three bedroom home and, the unpaid principal balance to FHA is $10,462.39 and the yearly payment is $948.00.

"They own two quarters of farmland. She has $2000.00 in savings and checking accounts, he $1500.00. She will be entitled to lump sum or stretched out retirement at age 65. She has wages from hospital work in the approximate sum of $6000.00 annually. He retains the rental income from the farmland in the approximate sum of $3500.00 annually. Their need for income is approximately the same.

"Plaintiff has worked for fourteen years at the San Haven Institution for the Retarded, raised her own children and some foster children. She must retire from her present hospital work at age 65.

Both parties appear to be in fairly good health, although he has suffered a heart attack in the past.

## "V

"During the marriage Plaintiff did the usual and routine chores of a housewife in addition to her daily work out of the home, *viz.*: cooking, washing, cleaning, gardening. She paid for all of the clothing used in the home except for Defendant's. She paid for all of the food and medical coverage.

## "VI

"The relative fault of the parties is heavily, but not completely, upon him. There was considerable verbal abuse of her including the use of foul names. There was continual arguing and lack of sexual compatibility. She treated him with considerable contempt and would not talk to him for long periods."

Thereafter, in its conclusions of law, the district court stated:

## "I

"In making distribution of the personal [and] real property of the parties the Court has considered the circumstances relative to the issue of equitable distribution under the statutes and case law. The three most recent cases are: *Haugeberg v. Haugeberg*, 258 N.W.2d 657 (N.D. 1977); *Haberstroh v. Haberstroh*, 258 N.W.2d 669 (N.D.1977) and *Hultberg v. Hultberg*, 259 N.W.2d 41 (N.D.1977), and 14–05–24 N.D.C.C.

## "II

"Accordingly, the Court makes the following division of property:

"TO JOHN:

"The home and the full quarter along with the mortgage. . . . [Parcel A]

"His checking account.

"Personal items.

"TO IRENE:

"The other real estate equaling a full quarter. [Parcel B]

"Her savings and checking accounts.

"Personal items including the 'strong box' and furniture brought from Canada."

The findings of fact, which are sustained by the record, clearly show that the district court applied the proper guidelines in making the property awards. The district court considered the ages of the parties, their earning abilities, the duration of the marriage, the parties' conduct, their health, property owned by them, its value, and whether it was acquired before or during the marriage.

We are aware of Mr. Schuchard's great attachment to the property upon which he has lived and farmed since 1937. But we are also aware that Mrs. Schuchard has lived and worked on the property for the last 20 years and helped care for Mr. Schuchard's mother until her death.

It is true the property in question was acquired from Mr. Schuchard's mother and that Parcel B was held in Mr. Schuchard's name alone, but these are only two of many factors which may be considered in making an equitable property distribution. This court has held that district courts have jurisdiction to award the separately owned property of one spouse to the other, if equity should require it. *Hultberg v. Hultberg, supra; Fine v. Fine*, 248 N.W.2d 838 (N.D. 1976); *Bellon v. Bellon*, 237 N.W.2d 163 (N.D.1976).

The findings of fact indicate that the parties have approximately the same income needs. To meet these needs, Mrs. Schuchard receives $6,000 in wages annually, which, except for a small pension, will cease when she retires at 65. Mr. Schuchard receives farm income, which was $3,500 in 1978, and Social Security benefits of $214 per month. During oral argument, counsel for Mr. Schuchard contended that giving each party one-half of the real property would drastically reduce Mr. Schuchard's earnings. However, the record reflects only the farm income Mr. Schuchard re-

ceived from the property during 1978. This amount may increase or decrease, depending upon the success of a particular year and when grain is sold. The amount of farm income will also depend upon the manner in which rent is determined. Because of these contingencies, we do not believe the amount of farm income for a single year can indicate that Mr. Schuchard's future earnings on one half of the property will be only one-half of the 1978 income, or $1,750.

After considering the factors discussed above, we are not left with a definite and firm conviction that the district court erred when it awarded Mrs. Schuchard Parcel B, and we therefore hold that the district court made an equitable distribution of the marriage property.

Judgment affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.